AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Northern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>One Samsung Cellular Phone Currently Located at 135<br>Trippany Rd., Massena, NY  13662, Further Described in<br>Attachment A | )<br>)<br>)<br>)<br>)<br>)    Case No.   8:23-MJ-569 (GLF) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

One Samsung Cellular Phone Currently Located at 135 Trippany Rd., Massena, NY  13662, Further Described in Attachment A

located in the _____ Northern _____ District of _____ New York _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, United States Code, Section 1324 | Smuggling of Aliens |

The application is based on these facts:

**See attached affidavit**

☑ Continued on the attached sheet.

☒ Delayed notice of  30  days *(give exact ending date if more than 30 days:* _____  *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

John Hanley, Border Patrol Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date:  October 10, 2023

_____
*Judge's signature*

City and state:  Plattsburgh, NY

Hon. Gary L. Favro, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: (1) One Samsung Cellular Phone; currently located at 135 Trippany Rd, Massena, New York 13662. | Case No.   8:23-MJ-569 (GLF) |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 4.1 FOR A WARRANT TO SEARCH AND SEIZE

I, John A. Hanley, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 4.1 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of (1) One Samsung Cellular Phone (collectively hereinafter "the Device"), which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Border Patrol Agent (BPA) with the United States Department of Homeland Security (DHS), Bureau of Customs and Border Protection (CBP), United States Border Patrol (USBP), and assigned to the Massena Border Patrol Station. I have been a Border Patrol Agent since August 2011. My primary duty is to assist in the prevention of illicit trafficking of people and contraband between the official ports of entry. My authority to perform this mission is articulated in the Immigration and Nationality Act, sections 235 and 287, and Title 8 U.S.C. Section 1357. These bodies of law relate to, among other things, a Border Patrol Agents authority to interrogate any alien or person believed to be an alien, and to make an arrest of any alien who is entering or attempting to enter the United States in violation of the immigration laws. To enforce these laws, I have received training at the

1

Federal Law Enforcement Training Center in Artesia, New Mexico in Law, Operations, Firearms, Driving Techniques, and Physical Techniques.

3.     I have investigated violations of the Immigration Nationality Act (INA) including illegal entry of aliens in violation of Title 8, United States Code, Section 1325, and the smuggling of aliens in violation of Title 8, United States Code, Section 1324. I have written and executed search warrants for electronic devices and have reviewed the evidence contained within.  I have analyzed data and information from electronic devices and presented that data as evidence during criminal investigations.

4.     The applied-for warrant would authorize the forensic examination of the Device, as described in Attachment A, for the purpose of identifying electronically stored data described in Attachment B. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that JOSE CALVA-CRUZ has committed a violation of Title 8, United States Code, Section 1324, by committing the offense of alien smuggling.  There is also probable cause to search the property described in Attachment A, for evidence of these crimes as described in Attachment B.

5.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.     As described further in Attachment A, the Device is one Samsung Cellular Phone and is currently located at 135 Trippany Rd, Massena, New York 13662.

7.     The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

2

**PROBABLE CAUSE**

8.      On October 4, 2023, Border Patrol Agents (BPA) were conducting static surveillance duties near a local motel in Ft. Covington, New York. In recent months, the Ft. Covington area has been heavily utilized by human smugglers and illegal non-citizens primarily due to its proximity to the United States/Canada International boundary.

9.      At approximately 3:00 a.m., agents observed a black Ford Edge bearing a Kansas license plate (D1859H) pull into the motel parking lot. When the vehicle entered the parking lot, one subject was driving along with one passenger. As the vehicle was pulling in, agents observed three male subjects run down the motel driveway and enter the back seat. It appeared all three subjects slumped over in the seat in an apparent attempt to conceal themselves.

10.     At approximately 3:01 a.m., agents observed a vehicle depart the parking lot and travel east on State Route 37. As unmarked agents followed the vehicle, they notified marked Border Patrol units of their observations and requested their assistance to conduct a vehicle stop. Agents continued to follow the vehicle eastbound on State Route 37, then east on State Route 122.

11.     At approximately 3:25 a.m., a vehicle stop was initiated by Border Patrol Agent Christian Jock and Supervisory Border Patrol Agent (SBPA) Kenneth Maurer on State Route 122 in Constable, New York. BPA Jock identified himself as a United States Border Patrol Agent and instructed the driver, later identified as Omar MERA-Marquez, to roll down all windows and turn the engine off. As the windows went down, SBPA Maurer observed three subjects in the rear of the vehicle, laying on top of one another.

3

12.     At this time, suspecting an alien smuggling event was occurring, BPA Jock instructed the subjects to place their hands in front of them.  BPA Jock questioned MERA as to his citizenship, to which he stated he is a Legal Permanent Resident citizen residing in Medford, New York.   The front seat passenger, identified as Jose CALVA-Cruz was questioned as to his citizenship and stated he was a citizen and national of Mexico, without proper documentation to be in, enter, or remain legally in the United States. The three back seat passengers all stated they were citizens and nationals of Mexico, illegally present in the United States.

13.     At approximately 3:30 a.m., MERA-Marquez and CALVA-Cruz were placed under arrest for alien smuggling.  The three other subjects were placed under arrest for being illegally present in the United States.   All subjects were transported to the Massena Border Patrol Station for processing and interviews.

14.     During questioning, MERA-Marquez stated CALVA-Cruz had asked him to pick up the three illegal aliens. MERA-Marquez stated he was told by CALVA-Cruz that he would be paid $500 per person. Additionally, GALVEZ-Garcia stated he was going to pay $650 to the individuals picking him up.

15.     Based on my training and experience in this and other cross-border criminal investigations I have been involved with, including individuals entering the United States illegally, individuals crossing the border illegally will often communicate and coordinate with someone to pick them up once in the United States or to inform them that they successfully crossed the border via cellular telephone. Individuals involved in crossing the border illegally often use a cellular telephone's GPS function to search for and map out potential crossing and pickup locations and to navigate to such places. An additional function of cellular telephones

that can be utilized by individuals crossing illegally includes the camera, as individuals will often take photos of where they are crossing the border illegally.

16.    Additionally, smugglers often communicate with each other using cellular phones and downloaded applications to coordinate smuggling events. Smartphones, such as the Device can also be used to access social media. Based on my training, knowledge, and experience of alien smuggling, I know that social media platforms, such as Facebook, are often used by smugglers to find customers and for communication between smugglers and aliens illegally entering the United States.

17.    Additionally, smugglers often require payment via apps designed to transfer money in the smugglers' accounts. Based on my training, knowledge, and experience of alien smuggling, I know that apps for the transfer of money may be used between the smugglers and aliens.

18.    The Device is currently in the lawful possession of the United States Border Patrol and has been since October 4, 2023.

## TECHNICAL TERMS

19.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a.    IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet

5

service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

b.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c.   Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic films. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

d.   Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of

electronic data and may offer additional features such as a calendar, contact list, clock, or games.

e. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

f. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving

7

them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

20.     Based on my training, experience, and research, I know that cellular phones have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

22.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

8

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23.   *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence

9

described by the warrant. The examination will be performed by representatives from the Department of Homeland Security and their designees.

24.    *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

_____
John Hanley
Border Patrol Agent
United States Border Patrol

I, the Honorable Gary L. Favro, United States Magistrate Judge, hereby acknowledge that this affidavit was attested to by the affiant by telephone on October _10_, 2023 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

_____
Hon. Gary L. Favro
United States Magistrate Judge

## ATTACHMENT A

### Property to be Searched

The property to be searched is the following one Device:

    a.  One Samsung Cellular Phone, seized from Jose GALVA-Cruz, which is currently

        located at 135 Trippany, Massena, New York 13662.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the

electronically stored information described in Attachment B.

11

## ATTACHMENT B

### Particular Things to be Seized

1.      All records on the Device described in Attachment A that relate to violations of Title 8 U.S.C. § 1324, involving Jose CALVA-Cruz, Omar MERA-Marquez, Jose GALVEZ-Garcia and/or other as-yet unidentified co-conspirators, including information regarding human smuggling activity, routes, meeting locations, payment arrangements, and more, and including:

      a.   Listings of incoming and outgoing calls with corresponding date/time of calls;

      b.   Stored telephone and address directories;

      c.   Direct connect and identification numbers;

      d.   Pictures and videos;

      e.   All audio recordings;

      f.   All voice mail recordings;

      g.   All location and GPS data;

      h.   All instant messaging and related stored communications;

      i.   All SMS messages and related stored communications; and,

      j.   Any other notations or electronic storage of any kind.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

      a.   Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

12

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

13